## M. P. MOLLER MOTOR CAR COMPANY et al. v. J. ELVIN UNGER, Executor.
[No. 18, October Term, 1933.]

*Decided January 30th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Roszel C. Thomsen,* with whom were *Walter L. Clark* and *John Wagaman* on the brief, for the appellants.

*Robert H. McCauley* and *J. Lloyd Harshman,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

On February 18th, 1932, Alice C. Wolf filed with the Industrial Accident Commission her claim for compensation as a total dependent of her deceased husband, William F. Wolf, which was heard by the commission on June 16th, 1932, and disallowed on December 23rd, 1932. On January 10th, 1933, Mrs. Wolf died, before taking an appeal from said decision. On January 18th, 1933, her executor, the appellee herein, appealed to the Circuit Court for Washington County, where the appeal was tried on March 10th, 1933, resulting in a reversal of the decision of the commission. The only compensation sought was for the period between the date of the death of Mr. Wolf and the date of

the death of Mrs. Wolf. The jury found, on the only issue submitted, that the death of Wolf was caused by the injury which he received on October 20th, 1931, while in the employ of the M. P. Moller Motor Car Company, Incorporated. This appeal is from the judgment on that verdict.

William F. Wolf, aged seventy-one, was a foreman in the plant of the appellant. On October 20th, 1931, while engaged in his usual work, he was injured by an iron clamp falling a distance of about five feet six inches, and striking him on the left side of his head, inflicting a wound about an inch long. It was dressed by a doctor and he returned to work, continuing in his employment until November 18th, although within about a week he began to have trouble with his speech, and his walk became unsteady and he dragged one leg. He stopped work on November 18th, and on the last day of the month took to his bed, where he was confined until the day of his death, January 29th, 1932, getting worse all the time. Theodore Cooper, who was working with Wolf at the time of the accident, testified as to how it happened, giving the position of Wolf under the screen at the time of the accident, the height of the screen, and the weight of the clamp, and describing the injury. Lambert B. McKee also described the screen and the position of the clamp on the screen and the wound. He was not present at the time of the accident, but, without objection, he testified that, after the wound was dressed, Wolf told him that the clamp fell off the screen and struck him on the head. This witness further testified that within a week or ten days he noticed the impediment in Wolf's speech which had not been there before the accident, during the six years witness had worked in the plant as Wolf's assistant; that Wolf's physical condition during that time was very good; that he was a very active man, never losing any time except once when he had a touch of the flu one winter. His widow testified that prior to the accident he had good health, had not been sick for a long time. His attending physician, Dr. W. D. Campbell, testified that he made his first examination on November 30th; that he saw the patient twice the first day and daily for the

rest of the week, and then less frequently until he got very ill, and he saw him twice a day just before his death; that he attended him for a minor injury to his finger some years ago, some months preceding his last illness; that he did not know anything about the state of his health prior to the time of the accident; that he had no occasion to attend him; that when he was first called in on the case, Mr. Wolf let him in, and when witness asked him some questions, he was unable to give him an answer; that he apparently understood what was asked him but was not able to answer the questions, and he seemed to have a little dragging of the right foot at the time; that he gradually grew worse, and although there were times when he seemed a little better, he made no permanent improvement and he developed paralysis of the right side, arm, and leg; that he also had some disturbance of the bladder and bowels. The witness said he had heard the testimony, and was asked, without objection, what, in his opinion, assuming the truth of the testimony, would be the cause of the illness of Wolf as witness found it as the result of his examination made in November, and in his attendance on him the week following; and his answer was, "Cerebral hemorrhage." Dr. Wroth testified that when he examined him some time in December, there was weakness of both the right arm and right leg, and he could not walk without material assistance; that his blood pressure was not elevated, and his blood vessels were not particularly thickened or tortuous.

At the opening of the case in the trial court, the employer and insurer moved the court to dismiss the appeal on the ground "that the appellant is not such a person as is entitled under the laws of Maryland to institute or prosecute said appeal," which motion was overruled. This ruling was the subject of the first exception. The motion was based on the following provision of section 36 of article 101 of the Code: "The right to any compensation payable to any dependent and unpaid at the date of death of any such dependent shall survive to and be vested in the surviving dependents as the Commission may determine, if there be such surviving de-

pendents, and if there be none such, then the compensation, shall cease."

To give the statute the meaning contended for by the appellants, that is, to construe it literally, would mean that an employer could enrich himself, by delaying the determination of his liability as long as possible, if the dependent should die pending the litigation; or even worse, he would gain by the death of a dependent while he was unjustly withholding a payment which had become due, if there were no surviving dependents. This we feel sure was not the intent of the Legislature. Nor could it have been the policy of the Legislature to deprive a dependent of credit for necessaries pending the determination of her claim. It seems to us obvious that "unpaid" in the statute means "unaccrued," and that what the Legislature had in mind was the weekly installments allowed a dependent over a period of years, as in the case of *Cambridge Mfg. Co. v. Johnson,* 160 Md. 248, 153 A. 283, where it was held the administratrix of a deceased employee was entitled to collect that portion which the decedent would have been entitled to collect up to the time of his death. The motion was properly overruled.

We find no error in the ruling which was the subject of the second exception. This exception was to permitting to be read to the jury the proof of death signed by the physician and contained in the record from the commission. The jury were entitled to be informed of the record. It amounted to no more than reading to the jury the declaration in a suit at law.

The third, fourth, fifth, sixth and seventh exceptions are considered together in appellants' brief. The objection urged is that the testimony in these exceptions was as to the cause of Wolf's condition some time prior to his death, and confused the cause of his illness at that time with the cause of his death. Appellants contend that there was no evidence in the case linking the accident or the trouble which followed it with the cerebral hemorrhage which caused his death. In our opinion the objection is not well taken. Dr. Campbell,

the witness to whom these questions were addressed, was in constant attendance upon the injured man from the date of his first visit on November 30th during an illness, which resulted in death and was continuous and progressive. The jury were entitled to know the cause of that illness, and, in the absence of an intervening cause, to infer that the cause of the illness was the cause of death.

But even if under the common law rules of evidence the rulings on these exceptions could be held to have been erroneous, under the broad statutory power of the Commission in determining the methods of making the investigation we could not say that the commission exceeded its powers or "misconstrued the laws or facts applicable in the case" in admitting the testimony excepted to; or that the exceptants had been denied any fundamental rights, as in *Dembach v. Bethlehem Shipbuilding Corp.*, 166 Md. 21, 170 A. 158.

Section 10 provides: "The Commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided, but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this article."

Under the provisions of Section 56, as amended by the Acts of 1931, ch. 406, and re-enacted by the Acts of 1933, ch. 508, the testimony contained in the record from the commission was properly submitted to the jury.

We have held that the effect of the changes made by the Act of 1931 was to confine the trial of cases on appeal from the commission to the evidence produced before the commission and transmitted by it to the trial court (except, of course, where additional facts are agreed upon in accordance with the provision of the act). *Thomas v. Penna. R. Co.*, 162 Md. 509, 160 A. 793; *Celanese Corp. v. Lease,* 162 Md. 587, 160 A. 801; *Monumental Printing Co. v. Edell,* 163 Md. 551, 164 A. 171; *Liberty Mutual Ins. Co. v. United States Fid. & Guar. Co.,* 164 Md. 117, 164 A. 179. And a majority

of the court hold that the intent of the statute is that all of the testimony on which the commission based its conclusion, whether excepted to or not, shall be submitted to the jury, if the case is to go to the jury. See *Dembeck v. Bethlehem Shipbuilding Corp., supra.*

We do not find any prejudicial error in the rulings in the eighth and ninth exceptions, which were to the striking out of testimony by the court which was not objected to before the commission. We have held that in workmen's compensation cases it is error on appeal to strike out testimony in the record from the commission to which no objection was made when offered. *Savage Mfg. Co. v. Magne,* 154 Md. 46, 139 A. 570; *Federal Tin Co. v. Hoffman,* 164 Md. 431, 165 A. 323. It is not necessary to repeat the reasons given in the cases cited. But there is nothing in the excluded testimony involved in the eighth exception which was not deducible from other testimony of the witness. And in the ninth, the witness simply said he would not venture an opinion. That answer had no substantive value. We have passed on these exceptions without regard to the statement made in appellee's brief, and not denied by the appellants in argument, that the questions and answers stricken out were on cross-examination and re-examination of Dr. Wroth on the part of his examination in chief which was stricken out by the trial court on motion of appellants. We could not consider that because it did not appear in the record.

This brings us to the tenth exception, which presents the most important question in the case. The only issue submitted by the trial court was: "Was the death of Wm. F. Wolf caused by the injury which he received on October 20th, 1931, while in the employ of the M. P. Moller Motor Car Co., Inc.?" The jury's answer was: "Yes." The copy of the docket entries in the record does not show that any judgment was entered on the verdict. But as the order for appeal is, "From the judgment of the Circuit Court for Washington County," and as there was no motion to dismiss the appeal, or any point made by appellants either in

their brief or oral argument of the absence from the record of evidence that a judgment was entered, we shall assume that a judgment was entered reversing the commission and remanding the case.

We find no error in claimant's first prayer if there was sufficient evidence to take the case to the jury. The only objections urged by appellants were to the granting of claimant's second prayer, and to the refusal of defendants A and B demurrer prayers.

The court granted defendants' first prayer on the burden of proof, and their second prayer, which instructed the jury that even though the jury should find that the death of claimant's decedent was due to a cerebral hemorrhage, unless they should further find that the particular cerebral hemorrhage which caused his death was caused by the injury which he received on October 20, 1931, their answer to this issue should be "no."

Claimant's second prayer instructed the jury that in passing upon the issue involved in the case the jury were to consider as an undisputed fact the happening of the accident to Wm. F. Wolf as described in the testimony. This prayer should not have been granted, as it is not proper to grant such an instruction in a segregated form. But it was not reversible error. There was no controversy about the happening of the accident. Indeed, it is practically conceded in defendants' prayers.

Defendants' demurrer prayers were properly refused. We said in *Baber v. Knipp & Sons,* 164 Md. 55, 67, 163 A. 862, 867: "It would seem to be established in this state in workmen's compensation cases that 'proximate cause' means that the result could have been caused by the accident and that there has not intervened, between the accident and the result, any other efficient cause." Of course, such possibility must amount to more than a guess, and the relation of the accident to the death or condition complained of, in point of time and circumstance, must be not merely fanciful. We also said in *Baber v. Knipp, supra:* "Medical testimony is not required in those cases where by other evidence facts are shown which

fairly and logically tend to prove that the accident was the efficient cause of the condition complained of."

On the testimony in this case as heretofore set out, we think it is brought within the rules announced in *Baber v. Knipp, supra,* and in a number of other cases in this court. *Dickson Const. & Repair Co. v. Beasley,* 146 Md. 568, 126 A. 907; *Bramble v. Shields,* 146 Md. 494, 127 A. 44; *Kauffman Construction Co. v. Griffith,* 154 Md. 55, 139 A. 548; *Armour Fertilizer Works v. Thomas,* 153 Md. 631, 139 A. 356; *Neeld Construction Co. v. Mason,* 157 Md. 571, 146 A. 748; *Celanese Corp. v. Lease,* 162 Md. 587, 160 A. 801. It is true Dr. Campbell was unable to say positively what was the cause of the cerebral hemorrhage which caused Wolf's death; but he did testify that the accident could have been the cause of the illness which he found, and he further said he knew of no intervening cause, although he attended him constantly after his first visit; and that the man grew steadily worse until his death.

Here we have a strong man who had worked constantly at the same employment for thirty-five years, losing practically no time on account of sickness, receiving a severe blow on the head, and within a week or ten days showing symptoms of paralysis, without any intervening cause, and growing steadily worse until his death. If we are to say that in such a case there is no evidence legally sufficient to submit to the jury, simply because men of his age do sometimes develop cerebral hemorrhages from natural causes, none of which were shown to have existed in this case (indeed, the evidence of Dr. Wroth indicates their absence), then it would be impossible for the dependents of any elderly man, however robust in health he may have been, to obtain compensation for his death following such an injury unless death resulted immediately. That position would require us to say that, in spite of a known and sufficient cause, recovery would be defeated by a mere speculative possibility not based on proof of the actual existence of any exciting cause. That is the proposition set up in defendants' B prayer so far as it was supported by the testimony in the case.

208

For the reasons stated in this opinion judgment was affirmed, with costs to the appellee in a *per curiam* order heretofore filed.

Since the filing of said order there has been a motion filed for a reargument, but we find no reason given in the motion which was not ably presented at the argument of the case, and which had not been carefully considered. The motion is therefore overruled.

*Affirmed, with cost to appellee.*